[No. B032085. Second Dist., Div. Three. Jan. 29, 1990.]

IRENE SIGALA et al., Plaintiffs and Appellants, v. STUART GOLDFARB, Defendant and Respondent.

**COUNSEL**

Countryman & McDaniel and David Junttila for Plaintiffs and Appellants.

Hillsinger & Costanzo, Thomas E. Tootell and Bruce S. Bolger for Defendant and Respondent.

**OPINION**

**KLEIN, P. J.**—Plaintiffs and appellants Irene Sigala, individually and as guardian ad litem for Ruben Joseph Sigala, Jr., Joe Kasper Sigala, Gilbert Mike Sigala, Louie Alfred Sigala and Virginia Irene Sigala (collectively, Sigala), appeal a judgment entered following a jury verdict in favor of defendant and respondent Stuart Goldfarb, M.D. (Goldfarb).

The sole issue presented is whether the trial court properly granted Goldfarb's pretrial motion to preclude any testimony by one of Sigala's proffered expert witnesses, John G. West, M.D. (West), on the ground West lacked the necessary qualifications.

The trial court's ruling was correct because West was not qualified within the meaning of Health and Safety Code section 1799.110 (section 1799.110), which allows expert medical testimony only from physicians who have had substantial professional experience within the last five years while assigned to provide emergency medical coverage in a general acute care hospital emergency department. The judgment therefore is affirmed.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

On November 14, 1981, Ruben Joseph Sigala (hereafter, the decedent) was struck by an automobile while crossing Figueroa Street. Paramedics transported the decedent to Glendale Adventist Medical Center, where he was examined by Goldfarb. Following the examination, the decedent was

---

[1] Goldfarb also sought to preclude any testimony by another of Sigala's expert witnesses, Peter D. Sliskovich, M.D., pursuant to the same code section, which motion was denied.

determined to be "stable for transfer" and was taken to County-USC Medical Center for treatment. He died on November 16, 1981.

On October 22, 1982, Sigala filed a first amended complaint against Goldfarb and others not parties to this appeal alleging professional negligence in their diagnosis and treatment of the decedent.

On November 24, 1987, shortly before trial, Goldfarb filed a motion *in limine* to preclude testimony by West, Sigala's designated expert witness. Goldfarb contended West lacked the requisite qualifications under section 1799.110, subdivision (c).[2] In support, Goldfarb invoked West's deposition testimony, wherein West testified: He had not been assigned to provide emergency medical coverage in a general acute care hospital emergency department since 1973, at which time West was serving his residency. During his residency, he considered himself a surgeon who ran the emergency room, rotating two or three months out of the year for a period of six years. West had never worked as an emergency room physician.

At the hearing on the motion, Sigala's counsel conceded "it is true that he [West] has not served in the emergency room, as the ER doctor, as he explained in his deposition, . . ." Nonetheless, Sigala's counsel argued West was a nationally recognized expert in the field of trauma care, and was "intimately familiar with the work of the emergency room physician, even though he isn't one himself." Counsel urged "[u]nder any other construction, any other approach to qualifying this man as an expert other than this particular statute, which is designed to protect the, the [*sic*] emergency room physician from being second-guessed by someone who doesn't know anything about his particular craft, but Dr. West is, his expertise would have to be accepted on its face, . . ."

---

[2] Section 1799.110 states: "(a) In any action for damages involving a claim of negligence against a physician and surgeon arising out of emergency medical services provided in a general acute care hospital emergency department, the trier of fact shall consider, together with all other relevant matters, the circumstances constituting the emergency, as defined herein, and the degree of care and skill ordinarily exercised by reputable members of the physician and surgeon's profession in the same or similar locality, in like cases, and under similar emergency circumstances. [¶] (b) For the purposes of this section, 'emergency medical services' and 'emergency medical care' means those medical services required for the immediate diagnosis and treatment of medical conditions which, if not immediately diagnosed and treated, could lead to serious physical or mental disability or death. [¶] (c) In any action for damages involving a claim of negligence against a physician and surgeon providing emergency medical coverage for a general acute care hospital emergency department, *the court shall admit expert medical testimony only from physicians and surgeons who have had substantial professional experience within the last five years while assigned to provide emergency medical coverage in a general acute care hospital emergency department.* For purposes of this section, 'substantial professional experience' shall be determined by the custom and practice of the manner in which emergency medical coverage is provided in general acute care hospital emergency departments in the same or similar localities where the alleged negligence occurred." (Added by Stats. 1983, ch. 1246, § 41, italics added.)

The trial court granted Goldfarb's motion, observing "even if Dr. West is the most qualified expert in the world, the statute is very explicit and limits the Court, and his testimony shall not be admitted unless he has substantial professional experience within the last five years while assigned to provide emergency medical coverage in a general, acute care emergency department."

The case was tried on November 30, 1987. The jury returned a verdict in favor of Goldfarb. Sigala appealed.

## CONTENTIONS

Sigala contends: West undeniably was qualified to testify as to the standard of emergency care, and the trial court erred in rigidly following the letter of section 1799.110 instead of its spirit, because the statute is based on the public policy of encouraging the provision of emergency medical services by insulating the providers of such services from assertions of negligence by expert witnesses who lack expertise in hospital emergency room care.

## DISCUSSION

1. *Standard of appellate review.*

■ The issue as to whether the trial court was bound by the plain meaning of section 1799.110 requires interpretation of the statute, which is a question of law for this court's independent determination. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112].)

■ The propriety of the trial court's ruling on the exclusion of West's testimony is governed by the qualifications of West to testify as an expert within the contemplation of the statute. Whether a physician has had substantial recent professional emergency care experience is a factual question to be determined by the trial court in the first instance. (§ 1799.110, subd. (c); see *Jutzi* v. *County of Los Angeles* (1987) 196 Cal.App.3d 637, 648 [242 Cal.Rptr. 74].)

The trial court excluded West's expertise based on counsel for Sigala's concession and West's deposition.

2. *Trial court properly excluded West's testimony.*

To reiterate, section 1799.110, subdivision (c), states in relevant part: "(c) In any action for damages involving a claim of negligence against a

physician and surgeon providing emergency medical coverage for a general acute care hospital emergency department, *the court shall admit expert medical testimony only from physicians and surgeons who have had substantial professional experience within the last five years while assigned to provide emergency medical coverage in a general acute care hospital emergency department.*" (Italics added.)

The purpose of section 1799.110 is to encourage the provision of emergency medical care by preventing malpractice claims based on the assertion that an emergency room physician fell below the standard of care which could have been provided by a specialist in the particular field acting under nonemergency conditions. (*Jutzi* v. *County of Los Angeles, supra*, 196 Cal.App.3d at p. 651.)

As indicated, Sigala conceded West lacked substantial recent professional emergency care experience under the plain meaning of section 1799.110. West's lacking qualification to testify under section 1799.110 therefore is uncontroverted. West's deposition testimony relating to his qualifications further left no room for doubt. Nonetheless, Sigala urges that in view of West's expertise, he was well qualified to testify as to the standards of emergency room care. Accordingly, admitting West's testimony would have provided the jury with the type of expert testimony which section 1799.110 seeks to ensure.

The argument is without merit.

"It is a settled principle in California law that 'When statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.' [Citation.]" (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].) Under the guise of construction, the court will not rewrite a law and will not give the words an effect different from the plain and direct import of the terms used. (*Estate of Tkachuk* (1977) 73 Cal.App.3d 14, 18 [139 Cal.Rptr. 55].) The literal meaning of the words of a statute may be disregarded, however, to avoid absurd results or to give effect to manifest purposes that, in light of the statute's legislative history, appear from its provisions considered as a whole. (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 849, fn. 6 [59 Cal.Rptr. 609, 428 P.2d 593].)

In effect, Sigala's argument seeks a judicial exception to section 1799.110 for nonemergency experts that would alter materially the clear language of subdivision (c), allegedly to better effectuate the Legislature's apparent intent. However, in construing a statute, the function of the court is simply to ascertain its meaning from the inherent terms or

substance and not to insert what has been omitted or omit what has been inserted. (*Estate of Tkachuk, supra*, 73 Cal.App.3d at p. 18.)

■ Because it was undisputed that West did not qualify under the plain meaning of section 1799.110, subdivision (c), and the literal meaning of the statute neither results in an absurdity nor contravenes the statute's purpose, the trial court properly granted Goldfarb's motion *in limine* precluding West's testimony, and lacked discretion to rule otherwise.

### DISPOSITION

The judgment is affirmed. Goldfarb to recover costs on appeal.

Arabian, J., and Croskey, J., concurred.