[No. S142209. Jan. 8, 2009.]

PROSPECT MEDICAL GROUP, INC., et al., Plaintiffs and Appellants, v. NORTHRIDGE EMERGENCY MEDICAL GROUP et al., Defendants and Respondents.
PROSPECT HEALTH SOURCE MEDICAL GROUP, Plaintiff and Appellant, v.
SAINT JOHN'S EMERGENCY MEDICINE SPECIALISTS, INC., et al., Defendants and Respondents.

498

## COUNSEL

Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, Thomas R. Freeman; Miller & Holguin, Stephan, Oringher, Richman, Theodora & Miller, Theodora Oringher Miller & Richman, Harry W. R. Chamberlain II, Kenneth E. Johnson, Robert M. Dato and Stacey L. Zill for Plaintiffs and Appellants.

Epstein Becker & Green, William A. Helvestine, Michael T. Horan and Carri L. Becker for California Association of Health Plans as Amicus Curiae on behalf of Plaintiffs and Appellants.

Fulbright & Jaworski, Buchalter, Nemer, Fields & Younger, Buchalter Nemer and Carol K. Lucas for California Association of Physicians Groups as Amicus Curiae on behalf of Plaintiffs and Appellants.

Amy L. Dobberteen, Debra L. Denton, Michael D. McClelland and Drew Brereton for Department of Managed Health Care as Amicus Curiae on behalf of Plaintiffs and Appellants.

Howard Rice Nemerovski Canady Falk & Rabkin, Jerome B. Falk, Jr., Ethan P. Schulman, Steven L. Mayer, Jonas M. Nahoum; Law Offices of Andrew H. Selesnick, Alleguez & Selesnick and Andrew H. Selesnick for Defendants and Respondents.

Catherine I. Hanson for California Medical Association as Amicus Curiae on behalf of Defendants and Respondents.

Astrid G. Meghrigian for American College of Emergency Physicians, California Chapter of the American College of Emergency Physicians and California Chapter, American Academy of Emergency Medicine as Amici Curiae on behalf of Defendants and Respondents.

Physicians' Advocates and Charles Bond for American Medical Association as Amicus Curiae on behalf of Defendants and Respondents.

Hooper, Lundy & Bookman, Lloyd A. Bookman, Suzanne S. Chou and Felicia Y Sze for California Hospital Association as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**CHIN, J.**—A health maintenance organization (HMO) commonly manages medical care in California. In the typical model, familiar to many, doctors contract to provide medical care to enrolled HMO members. Members generally use the services of one of the contracting doctors. When they do, and except for copayments the members must make when services are rendered, the HMO (or its delegate) pays the doctor under the existing contract. In this way, the parties agree upon, and know in advance, what their obligations and rights are and who must pay, and how much, for medical care.

The typical payment model sometimes breaks down, however, in the case of emergency care. In an emergency, an HMO member goes to the nearest hospital emergency room for treatment. The emergency room doctors at that hospital may or may not have previously contracted with the HMO to provide care to its members. In that situation, the doctors are statutorily required to provide emergency care without regard to the patient's ability to pay. Additionally, when the patient is a member of an HMO, the HMO is statutorily required to pay for the emergency care.[1] For HMO members, it is always clear in advance who has to provide emergency services—any emergency room doctor to whom the member goes in an emergency—and who has to pay for those services—the HMO. The conflict arises when there is no advance agreement between the emergency room doctors and the HMO regarding the *amount* of the required payment.

Thus, the potential inherently exists for disputes between the emergency room doctors and the HMO regarding how much the HMO owes the doctors for emergency services. When no preexisting contract exists, the doctors

---

[1] For ease of discussion, we will sometimes refer rather loosely to those required to provide emergency services without regard to the patient's ability to pay as emergency room doctors, while recognizing that the category is broader than just doctors (Health & Saf. Code, § 1345, subd. (i)), and to the entities required to reimburse those emergency room doctors for services rendered to their subscribers as HMO's, while recognizing that the entities are more technically described as "health care service plan[s]" and include the plans' delegates (Health & Saf. Code, § 1371.4, subd. (e)).

sometimes submit a bill to the HMO that they consider reasonable for the services rendered but that the HMO considers unreasonably high; conversely, the HMO sometimes makes a payment that it considers reasonable for the services rendered but that the doctors consider unreasonably low. The resolution of such disputes can create difficult problems.

But the question of how to resolve disputes between the doctors and the HMO over the amount due for emergency care is not before us in this case. The issue here is narrow, although quite important for emergency room doctors, HMO's, and their members: When the HMO submits a payment lower than the amount billed, can the emergency room doctors directly bill the *patient* for the difference between the bill submitted and the payment received—i.e., engage in the practice called "balance billing"?

Interpreting the applicable statutory scheme as a whole—primarily the Knox-Keene Health Care Service Plan Act of 1975, Health and Safety Code section 1340 et seq. (Knox-Keene Act)[2]—we conclude that billing disputes over emergency medical care must be resolved solely between the emergency room doctors, who are entitled to a reasonable payment for their services, and the HMO, which is obligated to make that payment. A patient who is a member of an HMO may not be injected into the dispute. Emergency room doctors may not bill the patient for the disputed amount.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because neither party petitioned the Court of Appeal for a rehearing, we take our facts largely from that court's opinion. (*Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 415 [9 Cal.Rptr.3d 121, 83 P.3d 518]; see Cal. Rules of Court, rule 8.500(c)(2).)

Plaintiffs and appellants, Prospect Medical Group, Inc., et al. (collectively Prospect), are individual practice associations.[3] Prospect manages patient care by executing written contracts with health care service plans.[4] It provides for medical care to persons who are members of health care service plans and who select a Prospect physician. Prospect also provides billing services to the

---

[2] All further statutory references are to the Health and Safety Code unless otherwise indicated.

[3] Section 1373, subdivision (h)(6), defines an individual practice association by reference to title 42 United States Code section 300e-1(5), which provides as relevant: "The term 'individual practice association' means a . . . legal entity which has entered into a services arrangement (or arrangements) with persons who are licensed to practice medicine . . . ."

[4] As pertinent here, section 1345, subdivision (f)(1), defines a health care service plan as "[a]ny person who undertakes to arrange for the provision of health care services to subscribers or enrollees, or to pay for or to reimburse any part of the cost for those services, in return for a prepaid or periodic charge paid by or on behalf of the subscribers or enrollees."

health care service plans contracted with Prospect. As such, it is a "delegate" of those health care service plans and is statutorily obligated to pay for emergency services provided to patients who have subscribed to those health care service plans. (§ 1371.4, subds. (b), (e).)

Defendants and respondents, Northridge Emergency Medical Group and Saint John's Emergency Medicine Specialists, Inc. (collectively Emergency Physicians), have exclusive licenses at two California hospitals to provide emergency room physician care. Emergency Physicians are health care providers and are statutorily required to provide emergency care without regard to an individual's insurance or ability to pay. (§ 1317, subd. (d); see also 42 U.S.C. § 1395dd.)

When patients who are members of health care service plans schedule medical services in advance, they generally go to physicians with whom the health care service plan or its delegate, like Prospect, has an express preexisting contract. On occasion, when these same patients need emergency medical care, they may be taken to a hospital where the doctors staffing the emergency room do not have a preexisting contract with the health care plan or its delegate. In this case, after Emergency Physicians provided emergency medical services to patients who were members of health care service plans that contracted with Prospect, they submitted reimbursement claims to Prospect. Sometimes Prospect paid Emergency Physicians less than the amount billed. In those cases, Prospect paid what it alleged was reasonable for the services rendered. Emergency Physicians then billed the patients directly for the differences between the bills they submitted and what Prospect paid. The parties refer to this practice as "balance billing."

After billing disputes arose between Prospect and Emergency Physicians, Prospect filed two related actions against Emergency Physicians seeking, among other things, a judicial determination that (1) Emergency Physicians were entitled only to "reasonable" compensation for emergency medical care, which Prospect claimed was equivalent to the Medicare rate; and (2) the practice of balance billing is unlawful. In one of the actions, Prospect alleged that Saint John's Emergency Medicine Specialists, Inc., "routinely bills Prospect's patients, threatens to turn over Prospect's patients to an outside collection agency, and threatens to take legal measures against Prospect's patients." The trial court sustained Emergency Physicians' demurrers without leave to amend and entered judgments accordingly. Prospect appealed both judgments, and the Court of Appeal consolidated the appeals.

The Court of Appeal concluded that balance billing is not statutorily prohibited. Second, it concluded that Prospect is not entitled to a judicial declaration imposing the Medicare rate as the reasonable rate. Third, it

concluded the trial court abused its discretion by denying leave to amend the complaint to permit Prospect to allege that Emergency Physicians charged more than a reasonable rate for a specific medical procedure. We granted Prospect's petition for review, which raised the sole question whether Emergency Physicians may engage in balance billing.

## II. DISCUSSION

The Knox-Keene Act governs this case. "The Knox-Keene Act is a comprehensive system of licensing and regulation under the jurisdiction of the Department of Managed Health Care." (*Bell v. Blue Cross of California* (2005) 131 Cal.App.4th 211, 215 [31 Cal.Rptr.3d 688] (*Bell*).) In addition, one statute not part of the act is pertinent here. Section 1317 requires emergency care providers to provide emergency services without first questioning the patient's ability to pay. (*Bell, supra*, 131 Cal.App.4th at pp. 215–216 & fn. 4.) Federal law is similar. (42 U.S.C. § 1395dd; see *Bell, supra*, at p. 215, fn. 4.)

■ Today, by statute, when emergency room doctors provide emergency services, HMO's are required to reimburse those doctors for the services rendered to their subscribers or enrollees. As *Bell* explained, the Knox-Keene Act "compels for-profit health care service plans to reimburse emergency health care providers for emergency services to the plans' enrollees. . . . [S]ection 1371.4 provides that a for-profit 'health care service plan shall reimburse providers for emergency services and care provided to its enrollees, until the care results in stabilization of the enrollee, except as provided in subdivision (c). As long as federal or state law requires that emergency services and care be provided without first questioning the patient's ability to pay, a health care service plan shall not require a provider to obtain authorization prior to the provision of emergency services and care necessary to stabilize the enrollee's emergency medical condition.' (§ 1371.4, subd. (b); see § 1371.4, subd. (f).) 'Payment for emergency services and care may be denied only if the health care service plan reasonably determines that the emergency services and care were never performed . . . .' (§ 1371.4, subd. (c); see § 1371.4, subd. (f); and see Cal. Code Regs., tit. 28, § 1300.71, subd. (a).)" (*Bell, supra*, 131 Cal.App.4th at p. 215.) "Subdivision (b) of section 1371.4 was enacted in 1994 to impose a mandatory duty upon health care plans to reimburse noncontracting providers for emergency medical services. [Citations.]" (*Id.* at p. 216.)

The combination of circumstances that (1) in an emergency a patient might go to emergency room doctors who have no preexisting contractual relationship with the HMO, (2) the doctors are required to render emergency care without asking whether the patient can pay for it, and (3) the HMO is

required to pay the doctors for those services, creates the problem underlying the issue before us. By the very nature of things, disputes may arise regarding how much the emergency room doctors may charge and how much the HMO must pay for emergency services.

Regulations of the Department of Managed Health Care provide that the HMO must pay "the reasonable and customary value for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications, and length of time in practice; (ii) the nature of the services provided; (iii) the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered; (v) other aspects of the economics of the medical provider's practice that are relevant; and (vi) any unusual circumstances in the case . . . ." (Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3)(B); see *Bell, supra,* 131 Cal.App.4th at p. 216.) Thus, the HMO has a "duty to pay a reasonable and customary amount for the services rendered." (*Bell, supra,* at p. 220.) But how this amount is determined can create obvious difficulties. In a given case, a reasonable amount might be the bill the doctor submits, or the amount the HMO chooses to pay, or some amount in between. In *Bell, supra,* 131 Cal.App.4th 211, the Court of Appeal interpreted the Knox-Keene Act to permit, when disputes arise, emergency room doctors to sue the HMO directly for the reasonable value of their services.

Prospect argues that section 1379, part of the Knox-Keene Act, prohibits balance billing. That section, enacted in 1975 and never amended, provides:

"(a) Every contract between a plan and a provider of health care services shall be in writing, and shall set forth that in the event the plan fails to pay for health care services as set forth in the subscriber contract, the subscriber or enrollee shall not be liable to the provider for any sums owed by the plan.

"(b) In the event that the contract has not been reduced to writing as required by this chapter or that the contract fails to contain the required prohibition, the contracting provider shall not collect or attempt to collect from the subscriber or enrollee sums owed by the plan.

"(c) No contracting provider, or agent, trustee or assignee thereof, may maintain any action at law against a subscriber or enrollee to collect sums owed by the plan."

Although no *express* contractual relationship exists between Prospect and Emergency Physicians, Prospect argues that the combination of statutes requiring emergency room doctors to render, and HMO's to pay for, emergency services creates an *implied* contract between emergency room doctors

and HMO's that has not been reduced to writing under section 1379, subdivision (b). The Court of Appeal disagreed. Interpreting section 1379 as a whole (but not in the context of the Knox-Keene Act as a whole), it held that this section does not cover the situation here. It found "that the language of subdivision (b) of section 1379 refers to and includes within its scope only voluntarily negotiated contracts between providers of health care services, like Emergency Physicians, and health care service plans or their delegates, like Prospect, based upon traditional contractual principles such as a meeting of the minds. Subdivision (b) does not include within its scope the implied contract as Prospect asserts." Accordingly, it "conclude[d] that section 1379, subdivision (b), was not intended to, and does not, prohibit the balance billing practices alleged in this case."

■ Reading the language of section 1379 in isolation, it does not readily apply to the precise situation here. No doubt the Legislature did not contemplate the situation of this case in 1975, when it enacted section 1379, for this situation did not exist in 1975. Section 1371.4, which obligates HMO's to pay for emergency services to its subscribers, was enacted in 1994, long after the Legislature enacted section 1379. But we must not view section 1379 in isolation. "We do not examine [statutory] language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].)

■ We have already seen that in 1975, the Legislature banned balance billing when an HMO is contractually obligated to pay the bill (§ 1379); that since 1994, HMO's have been obligated to pay for emergency care (§ 1371.4); and that the Knox-Keene Act permits emergency room doctors to sue HMO's directly over billing disputes (*Bell, supra*, 131 Cal.App.4th 211). These provisions strongly suggest that doctors may not bill patients directly when a dispute arises between doctors and the HMO's. Other provisions point in the same direction. Section 1317, subdivision (d), which requires emergency room doctors to render emergency care without questioning a patient's ability to pay, also provides that "the patient or his or her legally responsible relative or guardian shall execute an agreement to pay [for the services] *or otherwise supply insurance* or credit *information* promptly after the services are rendered." (Italics added.) This provision implies that once patients who are members of an HMO provide insurance information, they have satisfied their obligation towards the doctors. Section 1342, subdivision (d), expresses a legislative intent to "[help] to ensure the best possible health care for the public at the lowest possible cost by transferring the financial risk of health care from patients to providers."

Additionally, the Legislature contemplated there may be disputes over the amounts owed to noncontracting providers such as emergency room doctors, and therefore the Knox-Keene Act requires that each HMO "shall ensure that a dispute resolution mechanism is accessible to noncontracting providers for the purpose of resolving billing and claims disputes." (§ 1367, subd. (h)(2); see also § 1371.38, subd. (a) [directing the Dept. of Managed Health Care to adopt regulations ensuring that each HMO adopt a dispute resolution mechanism that is "fair, fast, and cost-effective for contracting and noncontracting providers"].) Finally, the Legislature has acted to protect the interests of noncontracting providers in reimbursement disputes by prohibiting HMO's from engaging in unfair payment patterns involving unjust payment reductions, claim denials, and other unfair practices as defined, and by authorizing monetary and other penalties against HMO's that engage in these patterns. (§ 1371.37; see also § 1371.39 [authorizing providers to report HMO's that engage in unfair payment patterns to the Dept. of Managed Health Care].)

■ The only reasonable interpretation of a statutory scheme that (1) intends to transfer the financial risk of health care from patients to providers; (2) requires emergency care patients to agree to pay for the services *or* to supply insurance information; (3) requires HMO's to pay doctors for emergency services rendered to their subscribers; (4) prohibits balance billing when the HMO, and not the patient, is contractually required to pay; (5) requires adoption of mechanisms to resolve billing disputes between emergency room doctors and HMO's; and (6) permits emergency room doctors to sue HMO's directly to resolve billing disputes, is that emergency room doctors may not bill patients directly for amounts in dispute. Emergency room doctors must resolve their differences with HMO's and not inject patients into the dispute. ■ Interpreting the statutory scheme as a whole, we conclude that the doctors may not bill a patient for emergency services that the HMO is obligated to pay. Balance billing is not permitted.[5]

■ Any doubt about the meaning of the Knox-Keene Act in this regard is easily resolved when legislative policy is considered. If statutory language permits more than one reasonable interpretation, courts may consider extrinsic aids, including the purpose of the statute, the evils to be remedied, and public policy. (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].) We perceive a clear legislative policy not to place patients in the middle of billing disputes between doctors and HMO's. Indeed, the Department of Managed Health Care argued in *Bell*, and the Court of Appeal concluded, that doctors may directly sue HMO's to

---

[5] Our holding is limited to the precise situation before us—billing the patient for emergency services when the doctors have recourse against the patient's HMO. We express no opinion regarding the situation when no such recourse is available; for example, if the HMO is unable to pay or disputes coverage.

resolve billing disputes in order to *avoid* the necessity of balance billing. The *Bell* court quoted the department's argument: " 'If providers are precluded from bringing private causes of action to challenge health plans' reimbursement determinations, health plans may receive an unjust windfall and patients may suffer an economic hardship when providers resort to balance billing activities to collect the difference between the health plan's payment and the provider's billed charges. If collection actions are pursued, unsuspecting enrollees can be forced to reimburse the full amount of a provider's billed charges even though those charges are in excess of the reasonable and customary value of the services rendered. [¶] The prompt and appropriate reimbursement of emergency providers ensures the continued financial viability of California's health care delivery system. . . . [D]enying emergency providers judicial recourse to challenge the fairness of a health plan's reimbursement determination . . . allows a health plan to systematically underpay California's safety-net providers and *unnecessarily* involve[s] the patient[s] in billing disputes between the provider and their health plan[s].' " (*Bell, supra,* 131 Cal.App.4th at p. 218, italics added.)

Because emergency room doctors prevailed in *Bell, supra,* 131 Cal.App.4th 211, and won the right to resolve their disputes directly with HMO's, no reason exists to permit balance billing. Thus, the Department of Managed Health Care, which supported doctors' rights to sue the HMO's directly in *Bell*, has appeared in this case as amicus curiae supporting patients' rights to be free of balance billing.

When a dispute exists between doctors and an HMO, the bill the doctors submit may or may not be the reasonable payment to which they are entitled. The *Bell* court made clear that an HMO does not have "unfettered discretion to determine unilaterally the amount it will reimburse a noncontracting provider . . . ." (*Bell, supra,* 131 Cal.App.4th at p. 220.) But the converse is also true; emergency room doctors do not have unfettered discretion to charge whatever they choose for emergency services. Emergency room doctors and HMO's must resolve their disputes among themselves. Interjecting patients into the dispute by charging them for the amount in dispute has only an in terrorem effect. As Prospect notes, although emergency room doctors "are entitled to 'reasonable' compensation for the services rendered, they cannot lawfully seek unreasonable payment from anyone." But a patient will have little basis by which to determine whether a bill is reasonable and, because the HMO is obligated to pay the bill, no legitimate reason exists for the patient to have to do so. Billing the patient, and potentially attempting to collect from the patient, will put unjustifiable pressure on the patient, who will often complain to the HMO, which complaints will in turn pressure the HMO to make the payment even if it is unreasonable. Such a billing practice is not a legitimate way to resolve disputes with an HMO.

Relying in part on dicta in *Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782 [9 Cal.Rptr.3d 734], Emergency Physicians argue that they may collect from the patient, who may then collect from the HMO. The *Ochs* court held that it did not have to decide the issue presented in this case, but it went on to "observe, however, that section 1379 appears only to limit 'balance billing' of insured patients by physicians who have contracted with the patients' plans. [The provider] may have a remedy against the individual patients, and those patients a remedy against PacifiCare." (*Id.* at p. 796.) But this is not what the statutory scheme provides. Section 1371.4, subdivision (b), does not say that patients must pay the emergency room doctors and then turn to their HMO's for reimbursement. Rather it states that the "health care service plan . . . shall reimburse providers for emergency services and care provided to its enrollees . . . ." This language does not authorize the roundabout route of the doctor collecting from the patient, who must then collect from the HMO. Rather, it mandates that the HMO pay the doctor directly. It does not involve the patient in the payment process at all.

Emergency Physicians and their supporting amici curiae argue that emergency room doctors are entitled to a reasonable fee for their services, and that HMO's must be held accountable and forced to pay a reasonable amount for those services. An amicus curiae brief supporting Emergency Physicians adds arguments that the California Constitution "requires that emergency physicians receive adequate compensation to cover their losses for serving the indigent," and that "California's emergency departments are already operating at capacity and risk jeopardizing quality of care." These arguments do not address the issue before us. Emergency room doctors *are* entitled to reasonable payments for emergency services rendered to HMO patients. All we are holding is that this entitlement does not further entitle the doctors to bill patients for any amount in dispute.

Emergency Physicians argue that two recent bills that the Legislature passed but the Governor vetoed show that the Legislature believes that balance billing is currently permitted. (Sen. Bill No. 981 (2007–2008 Reg. Sess.); Assem. Bill No. 2220 (2007–2008 Reg. Sess.).) We find no significance in these bills. They were legislative attempts to address broader concerns and, perhaps, clarify what is currently unclear. The Governor's veto messages state that he opposes balance billing but found the bills objectionable in other respects. This area of the law might benefit from comprehensive legislation. Failed attempts to provide some such legislation do not help us interpret the existing statutory scheme.

In support of its conclusion that emergency room doctors may engage in balance billing, the Court of Appeal cited a regulation that became operative sometime before 1978 and requires health care service plans to advise their

subscribers that "in the event the health plan fails to pay a noncontracting provider, the member may be liable to the noncontracting provider for the cost of the services." (Cal. Code Regs., tit. 28, § 1300.63.1, subd. (c)(15).) This regulation, the Court of Appeal believed, shows that the Department of Managed Health Care "recognizes balance billing." (As noted, that department argues against permitting balance billing in this case.) In our view, the regulation does not support the conclusion that balance billing is permissible in the situation here. It was promulgated long before the statute obligating HMO's to pay for emergency services was enacted in 1994 and governs a different situation. HMO members are not *required* to go to doctors who have contracted with their HMO. In a nonemergency situation, members may, if they choose, seek professional services from anyone. If they obtain services from a noncontracting provider, the HMO might not be obligated to pay all or even part of that provider's bill, depending on the exact terms of the health care plan. If the HMO is not obligated to pay the noncontracting provider, obviously, the member *would* be liable to pay for the services. This circumstance does not change the fact that under the Knox-Keene Act, HMO members are *not* liable to pay for emergency care.

■ The Court of Appeal also relied on the fact that the Department of Managed Health Care had, in the past, proposed but never adopted a regulation that would prohibit balance billing. While this matter was pending before this court, the Department of Managed Health Care did adopt a regulation that defines balance billing as an unfair billing pattern. (Cal. Code Regs., tit. 28, § 1300.71.39.) The parties dispute the meaning and validity of this regulation and whether we should give it deference. We need not get into such matters. Although we have given some deference to contemporaneous interpretations of a statute by an administrative agency charged with its administration, especially when the interpretation is in the form of a regulation adopted in accordance with the Administrative Procedure Act (e.g., *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1011–1014 [32 Cal.Rptr.3d 89, 116 P.3d 550]), here the regulation—adopted during the pendency of this litigation—is not contemporaneous with the statutory scheme. It is doubtful that we owe the regulation any deference. (See *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389 [241 Cal.Rptr. 67, 743 P.2d 1323] [not deferring to a noncontemporaneous interpretation]; *Jones v. Tracy School Dist.* (1980) 27 Cal.3d 99, 107 [165 Cal.Rptr. 100, 611 P.2d 441] [not deferring to an interpretation by an agency after the agency had become an amicus curiae in the case].) We base our holding on our interpretation of the relevant statutory scheme and not on the previous absence or current presence of any regulation.

The parties discuss the larger problem of adequate compensation for emergency room doctors. But this larger issue is not before us. Like the *Bell* court, "we reject the parties' suggestion that we can solve the societal and

economic problems defined by their rhetoric, and emphasize that our decision is limited to the precise issue before us . . . ." (*Bell, supra,* 131 Cal.App.4th at p. 222.)

## III.   CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Moreno, J., Corrigan, J., and McDonald, J.,[*] concurred.

---

[*]Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.