Filed 2/27/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SAN JOSE NEUROSPINE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>AETNA HEALTH OF<br>CALIFORNIA, INC. et al.,<br><br>    Defendants and<br>Respondents. | 2d Civ. No. B296716<br>(Super. Ct. No. 56-2017-<br>00498849-CU-CO-VTA)<br>(Ventura County) |

It has been said the law is based on technicalities. But technicalities that ignore legislation, common sense, and fairness, the law abhors.

Plaintiff San Jose Neurospine (SJN) appeals a summary judgment entered in favor of defendants Aetna Health of California, Inc.; Aetna Life Insurance Company; and KPMG, LLP (collectively "Aetna"). We conclude there are triable issues of fact whether SJN provided and billed for emergency services and was entitled to reimbursement from Aetna. We reverse and remand.

FACTS

On April 10, 2017, S.H. went to a hospital emergency room with "excruciating back pain." A hospital emergency room physician called Doctor Adebukola Onibokun for assistance. Onibokun is the owner of SJN, a company that provides medical treatment and care. Onibokun consulted with S.H. and determined she had "lumbar disc herniations at 2 levels." On the same day, he performed "a two level lumbar microdiscectomy" surgery on S.H.

S.H. was employed by the company KPMG, which funded a group health insurance policy for its employees that was administered by Aetna. That plan contained coverage for medical emergency services.

SJN submitted two claims to Aetna for reimbursement for the medical services provided to S.H. Aetna granted the claims only for "non-emergency surgery" and did not provide reimbursement to SJN for emergency medical services.

SJN claims that almost one month after S.H.'s surgery, it sent an appeal letter to "Aetna Provider Appeals," claiming reimbursement because of "underpayments on AN EMERGENCY SURGERY CASE." Again Aetna did not pay SJN for the emergency services it provided for S.H.

Two months after sending the letter, SJN filed a civil action against Aetna alleging seven causes of action. It stated, "This action arises out of Aetna's unjustified failure to pay $75,200 for emergency medical services provided by SJN to [S.H.]," a "patient insured by Aetna." SJN alleged: 1) Aetna operates a "health care service plan" as described in the Knox-Keene Care Service Plan Act of 1975 (Knox-Keene Act) (Health & Saf. Code, § 1371.4, subd. (b)); 2) SJN submitted "valid claims for reimbursement to

Aetna in a timely manner"; and 3) Aetna denied the claims and "refuse[d] to make payment."[1]

In its first cause of action, SJN alleged Aetna violated section 1371.4. Section 1371.4, subdivision (b) provides, in relevant part, "A health care service plan . . . shall reimburse providers for emergency services and care provided to its enrollees . . . ." In its second cause of action, SJN alleged Aetna breached an implied contract based on its "prior dealing" with Aetna by not paying for the emergency medical services it rendered to a patient covered by Aetna's health care service plan.

After filing its answer, Aetna filed a motion for summary judgment or, alternatively, summary adjudication of issues. Aetna claimed: 1) SJN "submitted two bills on Health Insurance Claim Form 1500" using "CPT [Current Procedural Terminology] codes 63030, 63035, and 69990"; 2) these were codes for "non-emergency surgery"; 3) Aetna processed these claims as non-emergency services; 4) Aetna "processed the out-of-network services at the 180% of the Medicare rate" pursuant to S.H.'s health plan and "applied the entirety of that amount, $2,783.22, to [S.H.'s] deductible." Aetna claimed that because SJN did not use the correct codes, SJN was not entitled to payment for emergency services and all its causes of action had to be dismissed.

SJN opposed summary judgment claiming, among other things, that its second bill was "rebilled as emergency [services] with 'ER' placed in number 24C of the [billing] form." SJN attached deposition testimony; the declarations of its counsel, S.H., and S.H.'s doctor; and other documentary evidence. It

---

[1] All statutory references are to the Health and Safety Code unless otherwise stated.

3

claimed that evidence proved these services were emergency services and that Aetna was responsible for paying for them.

At the hearing the trial judge said, "If the doctor doesn't submit the correct coding on a health insurance claim, he doesn't get paid for it." The court granted Aetna's motion for summary judgement. It also issued a summary adjudication of issues order with findings that each of SJN's causes of action could not be sustained.

DISCUSSION

*Triable Issues of Fact*

SJN claims there are triable issues of fact as to whether it rendered and billed for emergency services and was entitled to reimbursement from Aetna. We agree.

Summary judgment provides courts with "a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 587.) A defendant may obtain summary judgment by showing one or more elements of plaintiff's cause of action is missing or that there is a complete defense to the cause of action. (*Ibid*.)

" 'On appeal, the reviewing court makes " 'an independent assessment of the correctness of the trial court's ruling [regarding summary judgment], applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' " ' " (*YDM Management Co., Inc. v. Sharp Community Medical Group, Inc.* (2017) 16 Cal.App.5th 613, 622 (*YDM*).) "Our task is to determine whether a triable issue of material fact exists." (*Ibid*.) "[A]ny doubts as to the propriety of granting a summary judgment motion should be

4

resolved in favor of the party opposing the motion." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535.)

"Under state and federal law, emergency services and care '*shall be provided* to any person requesting the services or care' by any licensed health facility that has appropriate facilities and qualified personnel." (*YDM*, *supra*, 16 Cal.App.5th at p. 623.) "[T]he Knox-Keene Act imposes a requirement that health care service plans must reimburse a provider who has provided emergency services or care to a health care service plan's enrollee." (*Id.* at p. 624.)

"[P]ursuant to section 1300.71 of title 28 of the California Code of Regulations, a health service plan *must* reimburse a noncontracted provider for 'the reasonable and customary value' of emergency services provided to the plan's enrollee." (*YDM*, *supra*, 16 Cal.App.5th at p. 625.) "[M]edical providers use CPT codes to describe and communicate the nature of the medical services that have been provided to a patient." (*Id.* at p. 627.)

State law substantially limits the authority of health care service plans to deny claims for emergency services. (*Prospect Medical Group, Inc. v. Northridge Emergency Medical Group* (2009) 45 Cal.4th 497, 504.) " ' "Payment for emergency services and care may be denied *only* if the health care service plan *reasonably* determines that the emergency services and care *were never performed . . . .*" ' " (*Ibid.*, italics added.) Providers of emergency medical services whose claims are denied may, in appropriate cases, pursue claims for reimbursement based on an "implied-in-law right to recover for the reasonable value of [their] services." (*Bell v. Blue Cross of California* (2005) 131 Cal.App.4th 211, 221.)

5

Aetna cites *YDM*, *supra*, 16 Cal.App.5th 613, and notes the claimant did not use the proper codes for emergency services in its billing claims. The appellate court held the claimant was not entitled to reimbursement for emergency services and summary judgment was proper. Aetna contends that because SJN did not use the correct codes for emergency services, it has no cause of action for reimbursement.

In *YDM*, the court said the claimant 's billing codes did not indicate "*in any way that the services it provided* were 'emergency services.'" (*YDM*, *supra*, 16 Cal.App.5th at p. 633, fn. 13, italics added.) SJN claims *YDM* is distinguishable because here it filed a "corrected claim" indicating that the services it provided were emergency room services. It contends that, even though it may not have used the correct CPT code numbers, a trier of fact could reasonably infer Aetna was on notice these services were emergency service claims that should have been granted.

In the corrected billing, SJN sought compensation for $46,500 worth of services in the "ER"; $24,500 worth of services in the "ER"; and $4,200 worth of services also in the "ER." It set forth the term "ER" three times on the corrected billing claim form. The trial court found there were no triable issues of fact because there was no showing what "ER" means.

But there are triable issues of fact regarding the reasonable, well-understood meaning of "ER" on the corrected claim form. And there are triable issues concerning what a medical insurance company should know and do when it sees such an "ER" reference.

The term "ER" is a well-known abbreviation for "emergency room." (See, e.g., *Sigala v. Goldfarb* (1990) 222 Cal.App.3d 1450, 1453; *Cleveland v. United States* (5th Cir. 2006) 457 F.3d 397,

6

400; *United States ex rel. Parikh v. Citizens Medical Center* (S.D. Tex. 2013) 977 F.Supp.2d 654, 666-667; *Kasongo v. United States* (N.D. Ill. 2007) 523 F.Supp.2d 759, 776.) In hospitals, the term "ER" is commonly used and understood. It is a term well known in common parlance, literature, and popular culture. (Merriam-Webster's Collegiate Dict. (10th ed. 1999) p. 1382; American Heritage Dict. (3d college ed. 2000) p. 465; *ER* (medical drama television series).) If medical professionals and the public understand what ER means, there is a reasonable inference that those in the medical insurance industry also understand its meaning.

A trier of fact could reasonably infer: 1) the "ER" initials on the corrected billing form referred to the emergency room, 2) Aetna was consequently on notice that these services were emergency services, and 3) Aetna was therefore not in a position to claim emergency services "were never performed." (*Prospect Medical Group, Inc. v. Northridge Emergency Medical Group*, *supra*, 45 Cal.4th at p. 504.) If Aetna could not determine that emergency services "were never performed," that would support SJN's claim that Aetna improperly denied its emergency medical services claim. (*Ibid.*; § 1371.4, subd. (c).)

Aetna notes that it filed objections to the declarations SJN filed in opposition to summary judgment. The trial court sustained them, but they are not part of the record. But Aetna's objections to SJN's declarations are, in fact, part of the record that SJN produced for this appeal. Aetna's response to SJN's separate statement of undisputed facts sets forth its objections to those declarations. We have reviewed those objections and conclude that many of Aetna's objections did not state valid grounds to exclude relevant and admissible evidence contained in

7

SJN's declarations. At oral argument, counsel for SJN claimed the trial court did not sustain Aetna's objections. To resolve this dispute, we have taken judicial notice of those relevant trial court documents. (Cal. Rules of Court, rule 8.55(a)(1); *American Contractors Indemnity Co. v. County of Orange* (2005) 130 Cal.App.4th 579, 581, fn. 1.) The record shows that the trial court incorrectly sustained a number of objections or did not consider relevant and admissible evidence in the declarations of SJN's counsel, S.H., and Onibokun.

Aetna claims there was no admissible evidence to show that SJN's services were emergency services. But SJN's counsel filed a declaration attaching a portion of the deposition testimony of Aetna's employee Regina Devrinskas. Counsel declared that she was "Aetna's Person Most Knowledgeable." In her deposition, Devrinskas discussed the initial SJN claim and the corrected claim. She said, among other things, "So that's the claim we initially used. *And then [SJN] rebilled with the [billing code] 21 and E.R. to indicate that it was an emergency.*" (Italics added.)

Devrinskas was asked, "So would it be fair to say that the provider in this case submitted his claim and then resubmitted it *to identify it as an emergency room claim*?" (Italics added.) She answered, "*In this instance, yes*, but the claim had already been processed." (Italics added.) Her testimony is admissible evidence. (*YMD*, *supra*, 16 Cal.App.5th at pp. 630-631.) A trier of fact could reasonably infer this portion of her testimony, coupled with the "ER" references on the claim form, supported SJN's position that Aetna was on notice that SJN provided emergency services.

SJN produced additional evidence showing these services were emergency services. Patients may testify from their own personal knowledge about why they went to the hospital, and a patient's doctor may testify about the type of treatment the patient received. (Evid. Code, § 800; *People v. Becerrada* (2017) 2 Cal.5th 1009, 1032; *People v. Lewis* (2001) 26 Cal.4th 334, 356; *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 39; *Bowman v. Motor Transit Co.* (1930) 208 Cal. 652, 655; *Gunn v. Employment Development Dept.* (1979) 94 Cal.App.3d 658, 664, fn. 6 [there is usually "no better evidence of the state of one's health" than the medical opinions from the patient's treating doctor].)

In her declaration, S.H. said that she went to the "Emergency Room with excruciating back pain, lower extremity weakness and pain, and the inability to walk." She said she "underwent an emergency microdiscectomy." She declared, "I felt without immediate emergency care, I would suffer a permanent injury or death."

S.H. was not a medical expert. But she was in a position to know from her own personal knowledge why she went to the emergency room, her symptoms, and what she was feeling at that time. (Evid. Code, § 800; *People v. Becerrada, supra,* 2 Cal.5th at p. 1032; *Bowman v. Motor Transit Co., supra,* 208 Cal. at p. 655.)

Onibokun declared that he was the doctor who "performed the *emergency medical procedures* at issue in this case *in the emergency room*." (Italics added.) "On April 10th, 2017, I was called by the El Camino Hospital Emergency Room physician to consult on patient S.H." He said, "The patient was emergently taken *to the operating room* on the same day and she underwent a two level lumbar microdiscectomy. The surgery resulted in immediate and significant improvement of her symptoms and she

9

was able to be discharged home the day after surgery." (Italics added.) Onibokun was qualified to testify about the nature of the medical services he performed for his patient. (*Gunn v. Employment Development Dept.*, *supra*, 94 Cal.App.3d at p. 664, fn. 6.)

Onibokun also declared that due to a mistake the services were coded under "service code 21" when they should have been coded under "service code 23 for emergency." He said SJN's corrected billing to Aetna showed "the services *were emergency services by indicating an 'ER'* in column 24c 'EMG.' " (Italics added.) Aside from citations to billing code numbers, Aetna has not cited to any portion of the record that would refute the claim that SJN provided emergency services. Nor has it made any showing that "ER" means anything other than emergency room.

In his declaration, SJN's counsel said that one month after the surgery, SJN sent an "appeal letter" to Aetna "indicating the services were emergency services." A copy of that letter to the "Aetna Provider Appeals/Dispute Resolution" was attached as an exhibit to his declaration. The letter indicates it was a claim involving "underpayments on AN EMERGENCY SURGERY CASE."

But the declaration of SJN's counsel did not state sufficient facts to lay a foundation for the admissibility of this appeal letter, and the letter contained hearsay. Counsel indicated that he had personal knowledge about that appeal. But he did not state sufficient foundational facts to authenticate the document other than stating he was SJN's lawyer. He did not state whether he was familiar with SJN's operations and procedures, whether he personally knew what treatment S.H. received, whether he had

10

participated in the decision to appeal, or how he would personally know that such an appeal was authorized by SJN.

But the issue about this appeal letter was also raised in Onibokun's declaration. He said that "[d]uring [the first week of the month after the surgery], [SJN] also sent in an emergency surgery underpayment appeal letter to Aetna which clearly explains the *emergency nature* of the services provided." (Italics added.) Onibokun testified in his earlier deposition that appeals are handled by "[his] billing company" and he did not review the wording of the appeal letter before it was sent to Aetna. But because Onibokun was both SJN's owner and the doctor who performed the services, he was in a position to know whether SJN authorized an appeal for his services, the grounds and nature of the services provided and claimed, and whether SJN was underpaid.

Onibokun's declaration refers to the exhibit containing the appeal letter.[2] Onibokun was in the position to identify it as the appeal SJN authorized because of the specific confidential medical and personal content in the letter that only he as the treating physician would know about. (Evid. Code, § 1421.) Aetna has not shown why Onibokun could not testify about why such an appeal should prevail, nor has it made any showing that it was not aware of that appeal. Although the appeal letter contains some hearsay, Aetna has not shown why it could not be admitted for the non-hearsay purpose of showing Aetna was on notice that SJN was again claiming that it provided emergency services. (*Weathers v. Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 109; *People v. Jimenez* (1995) 38 Cal.App.4th 795, 802,

---

[2] Onibokun described the appeal letter as exhibit C, but he was apparently referring to exhibit D which contains that letter.

11

fn. 11; *People v. Harvey* (1991) 233 Cal.App.3d 1206, 1220; *People v. Fields* (1998) 61 Cal.App.4th 1063, 1069.)

Yet even aside from whether the appeal letter is admitted, Aetna has not shown why Onibokun, as SJN's owner and the treating doctor, could not testify that SJN appealed the denied claim *for his emergency services* and Aetna thereafter did not pay him.

SJN notes that, during the hearing on the summary judgment motion, the trial court said, "If the doctor doesn't submit the correct coding on a health insurance claim, he doesn't get paid for it." But the evidence about the coding is disputed. Aetna produced evidence that it determined that SJN did not use correct coding. But there was deposition testimony from Devrinskas that the billing *did contain a code* that refers to the emergency room. She was asked, "So in this case the patient did present to the emergency room, though, as far as you know, correct?" Devrinskas: "Only by the claim. *They billed a 450.*" (Italics added.) She was asked, "Which means it was the emergency room?" Devrinskas: "Right." She also said, however, that the form did not contain the references to the authorization for "surgical procedures." From this testimony a trier of fact could find that, notwithstanding mistakes in SJN's billing code filings, there was a reference to a code that correctly identified the "emergency room."

Aetna claimed its responsibility for paying for SJN's emergency services ended when it determined that SJN submitted incorrect billing codes notwithstanding SJN's efforts to later correct the claim and appeal. But the California Legislature requires health care service plans to have "a dispute resolution mechanism" that "is accessible to noncontracting providers for

12

the purpose of resolving billing and claims disputes." (§ 1367, subd. (h)(2).) That demonstrates that the Legislature did not intend to end responsibility for paying claims at the initial claims filing stage. It knew that doctors and health care service plans make mistakes on initial claim filings and that there must be a method to allow legitimate claims to ultimately be granted.

Consequently, where the health care service plan knows that emergency services were in fact provided, a coding mistake on a billing claim does not automatically excuse or terminate its duty to pay for the services under section 1371.4, subdivision (c). The statute provides, in relevant part, "Payment for emergency services and care may be denied *only* if the health care service plan . . . *reasonably* determines that the emergency services and care *were never performed . . . .*" (§ 1371.4, subd. (c), italics added; see also *Bell v. Blue Cross of California, supra*, 131 Cal.App.4th at pp. 215-216.)

This is a remedial statute that must be interpreted liberally to promote the underlying legislative goal. (*Clemente v. Amundson* (1998) 60 Cal.App.4th 1094, 1102.) That goal is to provide payment for emergency services actually provided notwithstanding a mistake in a billing code. (*Prospect Medical Group, Inc. v. Northridge Emergency Medical Group, supra*, 45 Cal.4th at p. 504; *Allstate Fire & Cas. Ins. Co. v. Perez ex rel. Jeffrey Tedder, M.D., P.A.* (Fla. Ct.App. 2013) 111 So.3d 960, 964 [insurer may have to look beyond the CPT code billing to determine whether the doctor's services must be reimbursed].) A trier of fact could reasonably infer that a health insurance company could violate section 1371.4, subdivision (c), if it: 1) knew or was on notice that emergency medical services were provided; or 2) ignored evidence that they were provided, and

13

then merely denied the claim solely based on a doctor's incorrect billing code reference.  There are triable issues of fact.

DISPOSITION

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.  The trial court's summary adjudication order involving issues one and two, which dismissed SJN's first and second causes of action, is reversed and vacated.  Costs on appeal are awarded to appellant.

CERTIFIED FOR PUBLICATION.


GILBERT, P. J.

We concur:


PERREN, J.


TANGEMAN, J.


14

Henry J. Walsh, Judge

Superior Court County of Ventura

_____

Nordic Star, Nicholas H. Van Parys for Plaintiff and Appellant.

Raines Feldman, LLP, Richard J. Decker, Marc Berkemeier and Robert M. Shore for Defendants and Respondents.