# IN THE SUPREME COURT OF CALIFORNIA

COUNTY OF SANTA CLARA,
Petitioner,

v.

THE SUPERIOR COURT OF SANTA CLARA,
Respondent;

DOCTORS MEDICAL CENTER OF MODESTO, INC., et al.,
Real Parties in Interest.

S274927

Sixth Appellate District
H048486

Santa Clara County Superior Court
19CV349757

July 10, 2023

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Evans concurred.

COUNTY OF SANTA CLARA v. SUPERIOR COURT

S274927


Opinion of the Court by Guerrero, C. J.


Hospitals and other medical providers are required by law to provide emergency medical services without regard to the patient's insurance status or ability to pay. (42 U.S.C. § 1395dd(b) & (h); Health & Saf. Code, § 1317, subds. (a) & (b).) If the patient is enrolled in a health care service plan, by statute the plan must reimburse the medical provider for providing such emergency care under the Knox-Keene Health Care Service Plan Act of 1975. (Health & Saf. Code, § 1340 et seq.; hereinafter Knox-Keene Act; *id.*, § 1371.4, subd. (b).) If the plan does not have a contract with the medical provider addressing the reimbursement rate, the plan must pay the provider the "reasonable and customary value" of the emergency care provided. (Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3)(B).) If the plan fails to pay the reasonable and customary value of such services, the medical provider may sue the plan directly for reimbursement under a quantum meruit theory. (*Prospect Medical Group, Inc. v. Northridge Emergency Medical Group* (2009) 45 Cal.4th 497, 506 (*Prospect Medical Group*); *Bell v. Blue Cross of California* (2005) 131 Cal.App.4th 211, 216–217 (*Bell*).)

We granted review to decide whether a similar claim for reimbursement of emergency medical services may be maintained against a health care service plan when the plan is operated by a public entity, or whether the Government Claims

1

Act (Gov. Code, § 810 et seq.) immunizes a public entity from such a claim.

In this case, Doctors Medical Center of Modesto, Inc., and Doctors Hospital of Manteca, Inc., (collectively, the Hospitals) provided emergency medical services to three individuals enrolled in a health care service plan operated by the County of Santa Clara (the County). The Hospitals submitted reimbursement claims to the County, but the County paid only a portion of the claimed amounts. The Hospitals sued the County for the remaining amounts based on the Knox-Keene Act's reimbursement provision. The trial court found that the Hospitals could state a quantum meruit claim against the County. On petition for writ of mandate, the Court of Appeal disagreed, holding that the County is immune from suit under the Government Claims Act and that no exception to immunity applies.

We conclude that the Government Claims Act does not bar the Hospitals' action against the County. The immunity provisions of the Government Claims Act are directed toward tort claims; they do not foreclose liability based on contract or the right to obtain relief other than money or damages. (Gov. Code, § 814.) The Hospitals have not alleged a conventional common law tort claim seeking money damages. Instead, they have alleged an implied-in-law contract claim based on the reimbursement provision of the Knox-Keene Act, and seek only to compel the County to comply with its statutory duty. Accordingly, the County is not immune from suit under the circumstances and the Hospitals' claim may proceed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The County operates a health care service plan called Valley Health Plan, which is licensed and regulated by the Department of Managed Health Care (DMHC) under the Knox-Keene Act. (Health & Saf. Code, §§ 1341, 1345, subds. (f)(1) & (j), 1349.) The Knox-Keene Act applies to private and public entities that operate health care service plans. (*Id.*, § 1399.5.) The Hospitals are licensed acute care hospitals in the Central Valley. The Hospitals do not have a contract with the County governing the rates payable for medical services provided to Valley Health Plan enrollees.

As previously explained, state and federal laws require hospitals and other medical providers to provide emergency medical services regardless of the patient's insurance status or ability to pay. (42 U.S.C. § 1395dd(b) & (h); Health & Saf. Code, § 1317, subds. (a) & (b).) If the patient is enrolled in a health care service plan, the Knox-Keene Act requires the plan to reimburse the medical provider for providing such emergency care. (Health & Saf. Code, § 1371.4, subd. (b).) If no contract exists between the plan and medical provider, the plan must pay the "reasonable and customary value" of the emergency care provided. (Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3)(B).)

In 2016 and 2017, the Hospitals provided emergency medical services to three patients enrolled in Valley Health Plan. The Hospitals submitted to the County claims for reimbursement totaling approximately $144,000 for the services provided. The County paid the Hospitals approximately $28,500. The Hospitals challenged the reimbursement decisions by submitting written administrative appeals, which the County denied.

The Hospitals then sued the County, alleging they are entitled to the entire amount claimed for the emergency services provided to the three patients enrolled in Valley Health Plan. The Hospitals' operative complaint alleged a single cause of action for breach of implied contract. In that complaint, the Hospitals alleged that the Knox-Keene Act imposes a mandatory duty on health care service plans to reimburse noncontracted providers for emergency medical services and that, pursuant to the Act, the Hospitals are entitled to reimbursement at a reasonable and customary rate for the services provided to the patients enrolled in Valley Health Plan. The Hospitals further alleged that the Knox-Keene Act and the DMHC's implementing regulations gave rise to implied-in-law agreements between the Hospitals and the County, obligating the County to pay for the emergency care provided by the Hospitals at a reasonable and customary rate. The Hospitals maintained the reasonable and customary rate for the services provided to Valley Health Plan's enrollees was the $144,000 claimed by the Hospitals, rather than the $28,500 reimbursed by the County. They also alleged that the County's conduct, including its partial reimbursement for care provided by the Hospitals, gave rise to implied-in-fact agreements between the Hospitals and the County.

The County demurred, asserting that the Hospitals' implied contract claim is based on a quantum meruit theory that cannot be maintained against the County as a public entity. The trial court overruled the demurrer. It found that the Hospitals had stated facts sufficient to constitute a cause of action, "whether fashioned as a cause of action for breach of an implied in fact contract or one for quantum meruit." The court resolved that "the public policy to promote the delivery and the quality of

health and medical care to the people of the State of California outweighs the policy to limit common law, or implied contract claims against public entities." It further determined that in entering the regulated health care plan market, the County "cannot expect to rely on a public policy regarding contracts as to public entities so that it can be exempted from those regulations."

The County sought review through a petition for writ of mandate, and the Court of Appeal granted relief. (*County of Santa Clara v. Superior Court* (2022) 77 Cal.App.5th 1018 (*Santa Clara*).) The Court of Appeal concluded that the Government Claims Act immunized the County from the Hospitals' implied-in-law contract claim. (*Santa Clara*, at pp. 1024–1025.) The court first construed the Hospitals' claim as seeking relief under a quantum meruit theory. (*Ibid.*) In the court's view, this theory was foreclosed by the immunity conferred by Government Code section 815, which provides generally that a public entity is not liable for an injury except as otherwise provided by statute. (*Santa Clara*, at pp. 1028–1029.) The Court of Appeal held that Government Code section 815.6's mandatory duty exception to the general rule of immunity did not apply because the County retains discretion in determining the reasonable and customary value of the Hospitals' services to Valley Health Plan enrollees. (*Santa Clara*, at pp. 1029–1032.) Having also concluded that the Hospitals could not state a claim for breach of an implied-in-fact contract (*id.* at pp. 1033–1034), the appellate court issued a peremptory writ directing the trial court to vacate its order overruling the County's demurrer and to enter a new order sustaining the demurrer without leave to amend (*id.* at pp. 1035–1036).

The Court of Appeal acknowledged that under its interpretation of the relevant statutes, "a provider has greater remedies against a private health care service plan than it does against a public entity health care service plan." (*Santa Clara, supra*, 77 Cal.App.5th at p. 1032.) The court viewed that result as being "driven by the Legislature broadly immunizing public entities from common law claims and electing not to abrogate that immunity in the context presented here." (*Id.* at p. 1032, fn. omitted.)

We granted the Hospitals' petition for review.

## II. DISCUSSION

### A. Standard of Review

When the Court of Appeal grants a writ petition challenging the trial court's order overruling a demurrer and directs it to sustain the demurrer, "the ordinary standards of demurrer review still apply." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747 (*City of Stockton*).) "We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 (*City of Dinuba*); see also *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967.)

## B. The Knox-Keene Act and Implementing Regulations

" 'The Knox-Keene Act is a comprehensive system of licensing and regulation under the jurisdiction of the Department of Managed Health Care.' " (*Prospect Medical Group*, *supra*, 45 Cal.4th at p. 504.) The Knox-Keene Act requires every health care service plan to be licensed by the DMHC. (Health & Saf. Code, § 1349.) By its terms, the Knox-Keene Act applies to "any private or public entity" operating a licensed health care service plan, subject to narrow exceptions not relevant here. (*Id.*, § 1399.5; see *id.*, § 1345, subds. (f)(1), (j).) The County-operated Valley Health Plan is a licensed health care service plan.

The purpose of the Knox-Keene Act is "to promote the delivery and the quality of health and medical care to the people of the State of California who enroll in, or subscribe for the services rendered by, a health care service plan or specialized health care service plan." (Health & Saf. Code, § 1342.) "The Legislature sought to accomplish this purpose by, among other things, (1) 'transferring the financial risk of health care from patients to providers' in order to '[h]elp . . . ensure the best possible health care for the public at the lowest possible cost,' (2) imposing 'proper regulatory procedures' in order to '[e]nsur[e] the financial stability' of the system, and (3) establishing a system that ensures health care service plan 'subscribers and enrollees receive available and accessible health and medical services rendered in a manner providing

continuity of care.' "[1] (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1005 (*Centinela*), quoting Gov. Code, § 1342, subds. (d), (f), & (g).)

In 1994, the Legislature amended the Knox-Keene Act to require health care service plans to "reimburse providers for emergency services and care provided to its enrollees, until the care results in stabilization of the enrollee." (Health & Saf. Code, § 1371.4, subd. (b), added by Stats. 1994, ch. 614, § 4.) According to one legislative analysis, the purpose of Health and Safety Code section 1371.4 is to eliminate "incentives for carriers to deny care to patients and reduce payments to physicians." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1832 (1993–1994 Reg. Sess.) as amended May 4, 1994, p. 3.) As the County acknowledges, the Knox-Keene Act imposes a duty on health care service plans to reimburse medical providers for the reasonable and customary value of the emergency service and care provided.

The Knox-Keene Act assigns a significant implementation role to the DMHC. "The [DMHC] is charged with the administration and enforcement of the laws relating to health care service plans. [Citation.] To carry out its duties, the DMHC is authorized to promulgate regulations." (*Children's*

---

[1] In furtherance of its intent "to ensure that the citizens of this state receive high-quality health care coverage in the most efficient and cost-effective manner possible," in enacting the Knox-Keene Act the Legislature also found and declared "that it is in the public interest to promote various types of contracts between public or private payers of health care coverage, and institutional or professional providers of health care services." (Health & Saf. Code, § 1342.6.)

*Hospital Central California v. Blue Cross of California* (2014) 226 Cal.App.4th 1260, 1271 (*Children's Hospital*).)

Following the Legislature's enactment of Health and Safety Code section 1371.4, the DMHC promulgated section 1300.71 of title 28 of the California Code of Regulations (hereinafter Regulation 1300.71). Regulation 1300.71 sets forth the reimbursement standards for contracting and noncontracting emergency medical providers. "The amount of reimbursement depends upon whether the hospital and plan already have a contract in place . . . ." (*Long Beach Memorial Medical Center v. Kaiser Foundation Health Plan, Inc.* (2021) 71 Cal.App.5th 323, 329 (*Long Beach Memorial*).) If the hospital and plan already have a contract, the plan must pay the "agreed upon" contractual rate. (Regulation 1300.71, subd. (a)(3)(A); see also *Long Beach Memorial*, at p. 329.) If the hospital and plan have not entered into a contract, the plan must pay the "reasonable and customary value for the [emergency] health care services rendered." (Regulation 1300.71, subd. (a)(3)(B); see also *Long Beach Memorial*, at p. 329.)

Regulation 1300.71, subdivision (a)(3)(B) specifies that the "reasonable and customary value for the health care services" provided by a noncontracted emergency medical provider must be "based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications, and length of time in practice; (ii) the nature of the services provided; (iii) the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered; (v) other aspects of the economics of the medical provider's

practice that are relevant; and (vi) any unusual circumstances in the case."[2]

These factors provide a framework for reimbursement, but do not necessarily resolve every dispute regarding the proper amount of payment. "In the final statement of reasons for [Regulation 1300.71], the DMHC explained that the intent was to establish a methodology for determining the reasonable value of health care services by noncontracted providers but that the criteria specified do not dictate a specific payment rate. Rather, the payor is required to calculate the appropriate reimbursement based on statistically credible information that takes the [specified] factors into consideration. If a payor fulfills its claims payment obligation using these criteria, the DMHC will consider the payor compliant with Health and Safety Code sections 1371 and 1371.35, i.e., the reimbursement of the claim will be deemed timely. 'However, the definition is not a substitute for traditional forums for contract dispute resolution. If a provider disputes the payor's calculation of the fair and reasonable value of the health care services he has rendered, the

---

[2] "In defining 'reasonable and customary value,' the DMHC incorporated language from *Gould v. Workers' Comp. Appeals Bd.* (1992) 4 Cal.App.4th 1059." (*Children's Hospital, supra*, 226 Cal.App.4th at p. 1272.) In *Gould*, the Court of Appeal held that in deciding whether a medical provider's fees for treating employment-related injuries was reasonable, the Workers' Compensation Appeals Board "may consider evidence regarding the medical provider's training, qualifications, and length of time in practice; the nature of the services provided; the fees usually charged by the medical provider; the fees usually charged in the general geographical area in which the services were rendered; other aspects of the economics of the medical provider's practice that are relevant; and any unusual circumstances in the case." (*Gould*, at p. 1071, fn. omitted.)

provider is free to seek resolution of that dispute in a court of law or through any other available civil remedy.' " (*Children's Hospital*, *supra*, 226 Cal.App.4th at p. 1273.)

In this respect, *Children's Hospital* further explained that in adopting Regulation 1300.71, subdivision (a)(3)(B), "the DMHC intended that reasonable value be based on the concept of quantum meruit and that value disputes be resolved by the courts. In fact, the DMHC has acknowledged that, unlike the courts, it ' "lacks the authority to set specific reimbursement rates under theories of *quantum meruit* and the jurisdiction to enforce a reimbursement determination on both the provider and the health plan." ' " (*Children's Hospital*, *supra*, 226 Cal.App.4th at p. 1273.) In a letter brief filed in *Bell*, the DMHC elaborated on the limits of its authority.[3] It explained that although it may direct a health care service plan to modify its reimbursement methodology if it finds a demonstrable and unjust payment pattern (Health & Saf. Code, § 1371.37; Regulation 1300.71), "this authority is not equivalent to rendering a judicial determination between two parties disputing over what constitutes the reasonable and customary value of a specific physician's services. [¶] . . . [¶] . . . [T]he Knox-Keene Act does not authorize the [DMHC] to set specific reimbursement levels or to exercise jurisdiction over providers by adjudicating individual payment disputes that arise between providers and health plans. Should the [DMHC] attempt to adjudicate such claims, its decisions would not be binding upon

---

[3] Prior to oral argument, we granted Santa Clara's request to take judicial notice of the DMHC's amicus letter brief filed in the Court of Appeal in *Bell*, *supra*, 131 Cal.App.4th 211.

the individual providers or upon health plans that contest the [DMHC]'s authority to set reimbursement rates."

Thus, as this court and others have previously observed, the Knox-Keene Act's statutory and regulatory scheme contemplates that private actions under a quantum meruit theory may be used to recoup appropriate reimbursement for services rendered.[4]  (E.g., *Prospect Medical Group, supra,* 45 Cal.4th at pp. 505–507; *Long Beach Memorial, supra,* 71 Cal.App.5th at p. 329; *Bell, supra,* 131 Cal.App.4th at pp. 216–217; *California Emergency Physicians Medical Group v. PacifiCare of California* (2003) 111 Cal.App.4th 1127, 1134 (*California Emergency Physicians*); Health & Saf. Code, § 1371.37, subd. (f) [specifying that the DMHC's imposition of sanctions for unfair payment patterns "shall not preclude, suspend, affect, or impact any other duty, right, responsibility, or obligation under a statute or under a contract between a health care service plan and a provider"].)  With this statutory

---

[4]   Although we assume for purposes of this case that the Knox-Keene Act does not create a private right of action for violations of its provisions, we reaffirm that the absence of a private right of action does not foreclose the availability of other remedies, such as an action for quantum meruit, brought by medical providers.  (See *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 603 [determination that statute "does not provide a private cause of action does not necessarily foreclose the availability of other remedies"]; *Coast Plaza Doctors Hospital v. UHP Healthcare* (2002) 105 Cal.App.4th 693, 706 [concluding that the DMHC does not have exclusive jurisdiction to enforce the Knox-Keene Act, and that medical providers may bring common law and other statutory causes of action]; see *id.* at p. 707 ["The Knox-Keene Act itself contemplates that a provider may have a cause of action under a statutory or common law theory"].)

and regulatory scheme in mind, we next consider the scope of governmental immunity under the Government Claims Act and whether it bars the Hospitals' implied-in-law contract claim based on section 1371.4 of the Knox-Keene Act.

## C. The Government Claims Act Does Not Bar the Hospitals' Implied-In-Law Contract Cause of Action Based on the Knox-Keene Act

Government Code section 815 sets forth the general rule of immunity for public entities under the Government Claims Act. Government Code section 815 provides that "[e]xcept as otherwise provided by statute" "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or any other person." However, another provision within the Government Claims Act, Government Code section 814, makes clear that "[n]othing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee."

The legislative committee comments to Government Code section 815 explain that "[t]his section abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation. In the absence of a constitutional requirement, public entities may be held liable only if a statute (not including a charter provision, ordinance or regulation) is found declaring them to be liable." (Legis. Com. com., 32 pt. 1, West's Ann. Gov. Code (2012 ed.) foll. § 815, pp. 215–216.) The comments also state: "Because of the limitations contained in Section 814, which declares that this part does not affect liability arising out of contract or the right to obtain specific relief against public entities and employees, the practical effect of this section is to eliminate any common

law governmental liability for damages arising out of torts.  The use of the word 'tort' has been avoided, however, to prevent the imposition of liability by the courts by reclassifying the act causing the injury." (*Id*. at p. 216.)  Likewise, the legislative committee comments to Government Code section 814 declare that "[t]he various provisions of this part determine only whether a public entity or public employee is liable for money or damages.  These provisions do not create any right to any other type of relief, nor do they have any effect on any other type of relief that may be available against a public entity or public employee." (Legis. Com. com., 32 pt. 1, West's Ann. Gov. Code (2012 ed.) foll. § 814, p. 208.)

The County argues that the immunity conferred under Government Code section 815 extends to the Hospitals' quantum meruit claim.  The County takes the position that the Government Claims Act's immunity provisions apply broadly to all "non-contractual" claims for money or damages, and it maintains that the Hospitals' quantum meruit claim does not sound in contract.  The Hospitals counter that the Government Claims Act applies only to torts, and thus it does not bar their cause of action involving what they characterize as an implied-in-law contract.  They also maintain that their claim for reimbursement, as mandated by statute, is not a claim for "money or damages" under Government Code section 814.[5]

---

[5]      The County urges us to not consider various arguments made by the Hospitals regarding the limited nature of the Government Claims Act because they did not raise these specific contentions below.  The County cites California Rules of Court, rule 8.500(c)(1), which provides that "[a]s a policy matter, on petition for review the Supreme Court normally will not

The impetus for the Government Claims Act and its general aims are well understood. In *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803 (*Quigley*), we recounted that "[f]or many decades before the Act, tort liability for public entity defendants was barred by a common law rule of governmental immunity. Over time, however, the common law rule became 'riddled with exceptions,' both legislative and judge made, and in 1961 this court abolished the rule altogether. (*Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211, 216 (*Muskopf*).) In response to *Muskopf*, the Legislature temporarily suspended the decision's effect [citation] and directed the California Law Revision Commission to complete a study of the issue it had begun some years earlier [citations]. The end product of the commission's study was a series of recommendations [citation], on which the Legislature relied in enacting the [Government Claims Act]." (*Quigley*, at p. 803, fn. omitted.) "The basic architecture of the [Government Claims Act] is encapsulated in Government Code section 815.

---

consider an issue that the petitioner failed to timely raise in the Court of Appeal." However, the Hospitals included these arguments in their petition for review, and we "may decide any issues that are raised or fairly included in the petition or answer." (*Id*., rule 8.516(b)(1).) Moreover, "[i]n a number of cases, this court has decided issues raised for the first time before us, where those issues were pure questions of law, not turning upon disputed facts, and were pertinent to a proper disposition of the cause or involved matters of particular public importance." (*People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 901, fn. 5; see also *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 215 ["we have discretion to consider on appeal purely legal issues raised in a petition for review or answer"].) Assuming that the Hospitals did not specifically raise these arguments in the courts below, we exercise our discretion to address them.

Subdivision (a) of that section makes clear that under the [Act], there is no such thing as common law tort liability for public entities; a public entity is not liable for an injury '[e]xcept as otherwise provided by statute.' " (*Ibid.*)

This history has informed our repeated characterization of the Government Claims Act as concerned with common law *torts*, as opposed to different claims.[6] The Government Claims Act, we have said, was designed to "govern[] . . . liabilities and immunities of public entities and public employees for *torts*." (*Quigley*, *supra*, 7 Cal.5th at p. 803, italics added; see also *Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 145 (*Kizer*) [explaining that the Government Claims Act "is a comprehensive statutory scheme that sets forth the liabilities and immunities of public entities and public employees for *torts*"], overruled on another ground in *Los Angeles Unified School District v. Superior Court* (2023) 14 Cal.5th 758.)

In *Kizer*, *supra*, 53 Cal.3d 139, we rejected an expansive interpretation of the Tort Claims Act, as the statute was then called, similar to the one advanced by the County in this case. The defendant in *Kizer*, also a county, was licensed to operate a long-term health care facility but failed to comply with the statutory scheme regulating such facilities. (*Kizer*, at pp. 141–

---

[6] Indeed, when first enacted, and for decades afterward, "the statute was known as the Tort Claims Act." (*Quigley*, *supra*, 7 Cal.5th at p. 803, fn. 1.) In 2012, the Legislature renamed the statute the Government Claims Act (Stats. 2012, ch. 759), a title that accounts for the fact that its claims presentation requirements, included in part 3 of the Act, sweep more broadly than do part 2's provisions regarding public entity liability and immunity. (*Quigley*, at p. 803, fn. 1; see *City of Stockton*, *supra*, 42 Cal.4th at pp. 740–742.)

144.) The county asserted that the Act shielded it from statutory penalties sought by the state. (*Kizer*, at p. 144.) We held otherwise, explaining: "The County argues that the Legislature intended to cover a wider range of liabilities than torts. The County points to the comment to Government Code section 815, emphasizing this passage: 'the use of the word "tort" has been avoided . . . to prevent the imposition of liability by the courts by reclassifying the act causing the injury.' The comment, however, also states that 'the practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts.' [Citation.] Moreover, the introductory comment to the Tort Claims Act as a whole states that 'a statute should be enacted providing that public entities are not liable for torts unless they are declared to be liable by an enactment.' [Citation.] Clearly, the emphasis of the Tort Claims Act is on *torts*." (*Kizer*, at p. 145, fn. 4.) Read against the background of general tort law, we concluded that the Act was intended to limit the state's "exposure to liability for actual compensatory damages in tort cases." (*Kizer*, at p. 146.)

More recently, in *City of Dinuba*, *supra*, 41 Cal.4th 859, we rejected the County of Tulare's claim that the Government Claims Act immunized it from an action to recover misallocated tax revenue, which the county was obligated by statute to allocate and distribute. (*City of Dinuba*, at pp. 865–868.) We held that the Government Claims Act did not foreclose the plaintiffs' claim for reimbursement, both because the injury alleged did not come within the Act's definition of " 'injury' " (*City of Dinuba*, at p. 867, citing Gov. Code, § 810.8), and because the plaintiffs were not seeking money damages (*City of Dinuba*, at p. 867). Regarding the latter ground, we explained: "[T]he immunity provisions of the Act are only concerned with

17

shielding public entities from having to pay money damages for torts. [Citation.] Section 814 explicitly provides that liability based on contract or the right to obtain relief other than money damages is unaffected by the Act. Plaintiffs do not seek damages; they seek only to compel defendants to perform their express statutory duty. While compliance with the duty may result in the payment of money, that is distinct from seeking damages." (*Ibid*.) Having also determined that "mandamus provides an appropriate remedy for defendants' failure to comply with their statutory duty" (*id*. at p. 868), we declined to resolve "whether plaintiffs could have maintained claims for quasi-contract or constructive trust had mandamus not been available" (*id*. at p. 870).

The Courts of Appeal have likewise recognized that the Government Claims Act's immunity and liability provisions are aimed at common law tort claims for money damages. (See, e.g., *Schooler v. State of California* (2000) 85 Cal.App.4th 1004, 1013 ["Courts have determined that under section 814, Government Code immunities extend only to tort actions that seek money damages"]; *Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 326 ["The Government Claims Act was enacted in 1963 to provide a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts"]; *Nealy v. County of Orange* (2020) 54 Cal.App.5th 594, 601 [same].) In various circumstances, the appellate courts have construed equitable claims for payment related to statutory obligations as not being subject to the Government Claims Act. (See, e.g., *Piccinini v. California Emergency Management Agency* (2014) 226 Cal.App.4th 685, 689 [promissory estoppel theory against state agency allowed to proceed where statute expresses a legislative policy in favor of allowing cause of

action]; *Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 958 (*Utility Audit*) [common count seeking refund of overcharges, based on statute, sounded in contract and was not prohibited by the Government Claims Act]; *Gonzales v. State of California* (1977) 68 Cal.App.3d 621, 628 [cause of action for breach of an implied contract under an unjust enrichment theory supported by statute allowed to go forward against state as not subject to Government Claims Act]; see also *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 315 [lowest bidding contractor could recover bid preparation costs against a public entity for the misaward of a public contract under a theory of promissory estoppel; court could use "promissory estoppel primarily to further certain public policies by creating a damages remedy for a public entity's statutory violation"].)

In short, our case law and well-reasoned holdings from the Courts of Appeal confirm that the Government Claims Act is concerned with shielding public entities from tort claims seeking money damages, and not with every conceivable claim that might be pressed against a public entity.

Notwithstanding this authority demonstrating that the Legislature was primarily focused on common law tort claims when it enacted the Act's immunity and liability provisions, the County maintains that the Government Claims Act forecloses the Hospitals' quantum meruit cause of action. The County argues, first, that the Hospitals' compliance with the Government Claims Act's claims presentation requirements establishes that they seek money or damages covered by the Act's immunity provisions. We reject this argument. As noted in footnote 6, *ante*, the claims presentation requirements of the Government Claims Act are broader in scope than the Act's

public entity immunity or liability provisions. (*City of Stockton*, *supra*, 42 Cal.4th at pp. 738, 741 [a public entity is not immune from liability on its contracts, but the claims presentation requirements nonetheless apply to such contract actions]; see *Hart v. County of Alameda* (1999) 76 Cal.App.4th 766, 779 ["the Legislature intended the claims presentation statutes to broadly apply to ' " 'all forms of monetary demands . . . ,' " ' and the earlier conclusion that the Claims Act was limited to tort claims was based on the government *immunity* statutes, which contain different statutory language"].)[7] The Hospitals' mere compliance with the Act's claims presentation requirements does not control or determine the nature of their action.

The County also argues that the Government Claims Act's immunity provisions apply broadly to any common law claim, other than a claim alleging an express contract, seeking "money or damages" (Gov. Code, § 814). It asserts that "to the extent the Legislature considered the existence of a quantum meruit claim brought against [a public entity] when drafting the Government Claims Act, it would have understood such a claim as a non-contractual action for money or damages, and thus a 'tort.' " Yet, even if we were to assume that the Government Claims Act's immunity provisions might apply to some claims that are not obviously tortious in nature, the contours of which we need not delve into here, we are confident that the Act does

---

[7] The County's reliance on *Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1493, is equally unpersuasive because that case also concerns the Government Claims Act's claims presentation requirements, and not its immunity and liability provisions.

not immunize the County from the Hospitals' quantum meruit claim to enforce a statutory duty of reimbursement.

"Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.' [Citation.] To recover in quantum meruit, a party need not prove the existence of a contract [citations], but it must show the circumstances were such that 'the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made.'" (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 458 (*Huskinson & Brown*).) The doctrine manifests " ' "a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly." ' " (*Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1315; see Rest., Restitution, §§ 113, 114.) "In interpreting statutes dealing with claims 'arising upon contract' to cover quasi-contractual obligations, the term 'quasi-contract' is sometimes applied to statutory obligations that cannot be accurately classified as strictly contractual or subject to tort liability." (1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 104, pp. 148–149.)

In this respect, the Court of Appeal below applied a rubric whereby "[w]hether an action sounds in contract or tort for purposes of governmental immunity ' " 'depends upon the nature of the right sued upon, not the form of the pleading or

relief demanded. If based on breach of promise it is contractual; if based on breach of a noncontractual duty it is tortious.' " ' " (*Santa Clara, supra*, 77 Cal.App.5th at p. 1033, quoting *Roe v. State of California* (2001) 94 Cal.App.4th 64, 69.) Although this distinguishing principle may be useful in other contexts, we regard it as unhelpful in ascertaining the nature of the Hospitals' quantum meruit claim, which is premised on a theory of a promise implied in law (see *Huskinson & Brown, supra*, 32 Cal.4th at p. 458), and, more specifically, on a reimbursement duty imposed by statute. Instead, we draw support from our decisions in *City of Dinuba* and *Kizer*, which share sufficient commonalities with this matter to lead us to conclude that the Government Claims Act does not immunize the County from the Hospitals' action.

In *City of Dinuba*, the plaintiffs sought to recover misallocated tax revenue, which the defendant county was obligated by statute to distribute to the plaintiffs. (*City of Dinuba, supra*, 41 Cal.4th at p. 863.) We held that the Government Claims Act's immunity provisions did not apply to the plaintiffs' action, in part because we determined that the plaintiffs did not seek money damages. (*City of Dinuba*, at p. 867, citing Gov. Code, § 814.) We concluded that the plaintiffs instead sought "only to compel defendants to perform their express statutory duty. While compliance with the duty may result in the payment of money, that is distinct from seeking damages." (*City of Dinuba*, at p. 867.)

Here too, the Hospitals do not seek money damages. They seek to compel the County to comply with its mandatory duty under the Knox-Keene Act and its implementing regulations to reimburse the Hospitals for the reasonable and customary value of their emergency services and care. Although some differences

22

exist between the claims in *City of Dinuba* and this matter, the nature of the right sued upon — the statutory right to receive funds — is analogous. As we noted in *City of Dinuba*, "Section 814 explicitly provides that liability based on contract or the right to obtain relief other than money damages is unaffected by the Act." (*City of Dinuba, supra*, 41 Cal.4th at p. 867.) This provision applies with equal force here. (See *Kizer, supra*, 53 Cal.3d at p. 146 [Government Claims Act was intended to limit government "exposure to liability for actual compensatory damages in tort cases"]; *Utility Audit, supra*, 112 Cal.App.4th at p. 958 ["A claim for refund of overcharges, without more, appears to be based upon breach of a contractual duty"]; see also *Bowen v. Massachusetts* (1988) 487 U.S. 879, 893 [action for reimbursement of withheld Medicaid payments federal agency was statutorily obligated to provide is not an action for " 'money damages' as that term is used in the [Administrative Procedure Act]"].)[8]

Certain aspects of our decision in *Kizer* are also on point. In determining that the state's enforcement action in *Kizer* did not fall within the purview of the Government Claims Act's immunity provisions, we first emphasized that this particular action "lies outside the perimeters of a tort action and therefore does not readily lend itself to a liability analysis based on tort

---

[8] As previously noted, in *City of Dinuba, supra*, 41 Cal.4th at page 868, we concluded that the defendants' failure to comply with their statutory duty gave rise to mandamus relief. The fact that an additional form of mandamus relief was appropriate in *City of Dinuba* does not alter our view regarding the nature of the underlying claims in this case. As in *City of Dinuba*, we are persuaded that the action in this case seeks relief other than money damages.

principles." (*Kizer, supra*, 53 Cal.3d at p. 146.) Based on the detailed statutory scheme regulating long-term health care facilities, we concluded that "[g]ranting immunity to public entities from the [statutory] penalties would be contrary to the intent of the Legislature to provide a citation system for the imposition of prompt and effective civil sanctions against long-term health care facilities in violation of the laws and regulations of this state." (*Ibid.*) We also emphasized that "nothing in the statutory scheme . . . suggests that state and other government health facilities should be treated differently than private facilities" (*id.* at p. 148), and we perceived " 'no significant public policy reason to exempt a state licensed health-care facility from liability for penalties under the [Act] simply because it is operated by a public rather than a private entity' " (*ibid.*).

Like the defendant in *Kizer*, the County is subject to the terms of the Knox-Keene Act, a detailed regulatory scheme, because it chose to enter the health care plan market and operate a licensed health care service plan. As has been discussed, the Knox-Keene Act applies to "any private or public entity" operating a licensed health care service plan, subject to narrow exceptions not applicable here. (Health & Saf. Code, § 1399.5; see *id.*, § 1345, subds. (f)(1), (j).) The statutory and regulatory scheme explicitly provides for mandatory reimbursement (*id.*, § 1371.4, subd. (b); *Centinela, supra*, 1 Cal.5th at p. 1001; *Prospect Medical Group, supra*, 45 Cal.4th at pp. 501, 504, 507; *Long Beach Memorial, supra*, 71 Cal.App.5th at p. 329; *Bell, supra,* 131 Cal.App.4th at p. 216; *California Emergency Physicians, supra,* 111 Cal.App.4th at p. 1131) and specifies, in general but comprehensive terms, how to calculate that reimbursement amount (Regulation 1300.71).

(See *Long Beach Memorial*, at p. 338 ["The underlying duty to repay [emergency medical services] is established by the Knox-Keene Act, . . . while the amount of repayment is governed either by contract (when the parties have a preexisting contract) or by the quasi-contractual remedy of quantum meruit (when they do not)"].)

As in *Kizer*, we see "nothing in the statutory scheme that suggests that state and other government health [care service plans] should be treated differently than private [health plans]," nor do we perceive any " 'significant public policy reason to exempt a state licensed [health care service plan] from liability . . . under the [Knox-Keene] Act simply because it is operated by a public rather than a private entity . . . .'" (*Kizer*, *supra*, 53 Cal.3d at p. 148.) To the contrary, disallowing such a claim against the County would undermine an important purpose of the Knox-Keene Act, as we and others have interpreted it. As the DMHC, appearing as amicus curiae in *Bell*, emphasized, " 'The prompt and appropriate reimbursement of emergency providers ensures the continued financial viability of California's health care delivery system. . . . [D]enying emergency providers judicial recourse to challenge the fairness of a health plan's reimbursement determination[] allows a health plan to systematically underpay California's safety-net providers . . . .'" (*Bell*, *supra*, 131 Cal.App.4th at p. 218.) The Legislature's purpose in enacting section 1371.4 of the Knox-Keene Act would be ill-served by a rule immunizing public entities that operate licensed health care service plans from emergency services

reimbursement claims, thus reintroducing the very risk of systematic underpayment the Legislature sought to eliminate.[9]

Moreover, and as noted *ante,* the DMHC " 'lacks the authority to set specific reimbursement rates under theories of *quantum meruit* and the jurisdiction to enforce a reimbursement determination on both the provider and the health plan. Because the [DMHC] cannot provide an adequate forum, health care providers must be allowed to maintain a cause of action in court to resolve individual claims-payment disputes over the reasonable value of their services.' " (*Bell, supra,* 131 Cal.App.4th at p. 218.) Under the County's interpretation of the Government Claims Act, emergency medical providers without a contract in place with a health care service plan could resolve individual disputes over reimbursement only if that plan were operated by a private, rather than public, entity. Again, we find this proposed two-tier system "contradicts the very public policy that the Legislature sought to implement" with the reimbursement provision of the Knox-Keene Act.[10] (*Kizer, supra,* 53 Cal.3d at p. 148.)

---

[9] Indeed, more than a decade after the Legislature enacted the Knox-Keene Act's reimbursement provision, former Governor Arnold Schwarzenegger issued an executive order reaffirming the public policy in favor of requiring all health care service plans to reimburse emergency medical providers at the reasonable and customary value. (Governor's Exec. Order No. S-13-06 (July 25, 2006).)

[10] Given the DMHC's express acknowledgment that it cannot set specific reimbursement levels or adjudicate individual payment disputes between health plans and emergency physicians, we also reject the County's argument that a quantum meruit action is unnecessary because the Knox-

We conclude from the foregoing that allowing the Hospitals to proceed with their quantum meruit claim premised on the County's statutory obligation of reimbursement violates neither the letter nor the spirit of the Government Claims Act. It also furthers a fundamental purpose of the Knox-Keene Act, protecting the continued financial viability of California's health care delivery system, by ensuring that all emergency medical providers have an adequate remedy if there are disputes over payment, either by alleging breach of contract (if there is a contract between the provider and health care plan), or by raising a quantum meruit claim based on the Knox-Keene Act's reimbursement obligation (if there is no contract in place).

In arguing that the Government Claims Act's immunity provisions extend to quantum meruit claims, the County cites three decisions by this court predating the Act in which we discussed the availability of quantum meruit claims against government entities: *Miller v. McKinnon* (1942) 20 Cal.2d 83 (*Miller*), *Los Angeles Dredging Co. v. Long Beach* (1930) 210 Cal. 348 (*Los Angeles Dredging Co.*), and *Zottman v. San Francisco* (1862) 20 Cal. 96 (*Zottman*). The County asserts that these decisions convey a general hostility toward quantum meruit claims against the government that was then maintained under the Act.

We draw a more limited rule from these cases. Each of these decisions involved express contracts entered into by public entities that were found to be void and unenforceable because they were made in violation of a statute or municipal charter. (*Miller, supra,* 20 Cal.2d at p. 86 [contract between county and

Keene Act provides adequate alternative mechanisms for resolving reimbursement disputes.

contractor held illegal because it did not comply with statute requiring public agencies to let competitive bidding before entering into certain contracts]; *Los Angeles Dredging Co.*, *supra,* 210 Cal. at p. 354 [contract entered into by city without letting of bids rendered void because it violated city charter]; *Zottman*, *supra*, 20 Cal. at pp. 102–103 [same].)  It was in this context, of considering contracts entered into by public entities in a manner not authorized by statute or charter, that we stated: " '[C]ontracts wholly beyond the powers of a municipality are void.  They cannot be ratified; no estoppel to deny their validity can be invoked against the municipality; and ordinarily no recovery in *quasi* contract can be had for work performed under them.   It is also settled that the mode of contracting, as prescribed by the municipal charter, is the measure of the power to contract; and a contract made in disregard of the prescribed mode is unenforceable.'   [Citations.]   And even though the person with whom the contract was made has supplied labor and materials in the performance of the contract and the public agency has received the benefits thereof, he has no right of action to recover in quantum meruit the reasonable value thereof." (*Miller*, at p. 88, quoting *Los Angeles Dredging Co.*, at p. 353.)

Read together and as relevant here, *Miller*, *Los Angeles Dredging Co.*, and *Zottman* stand for the narrow principle that if a contractor enters into an express contract with a public entity, and the contract is later found to be in violation of an applicable statute or charter and therefore deemed void, the contractor has no right to recover the reasonable value of services in quantum meruit.   These decisions are readily distinguishable from the Hospitals' quantum meruit claim against the County, which concerns no express contract and is

instead based on a statutorily mandated reimbursement provision. We are doubtful that the Legislature understood these decisions to mean that a quantum meruit claim for payment *required by statute* and otherwise resembling the claim pursued here is "a non-contractual action for money or damages, and thus a 'tort,' " as the County asserts it must have.[11]

Although other Court of Appeal decisions have broadly held that quantum meruit claims may not proceed against public entities, those decisions contain thin analyses and are distinguishable on their facts. It has been said, for example, that "[a]s a general rule, a public entity cannot be sued on an implied-in-law or quasi-contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the need to protect and limit a public entity's contractual obligations." (*Lundeen Coatings Corp. v. Department of Water & Power* (1991) 232 Cal.App.3d 816, 831, fn. 9; see also *Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 830; *Los Angeles Equestrian Center, Inc. v.*

_____

[11] Indeed, several other states allowed quasi-contractual claims to proceed against public entities under appropriate circumstances at the time the Legislature enacted the Government Claims Act. (See, e.g., *Hailey v. King County* (Wash. 1944) 149 P.2d 823, 825 ["the doctrine of implied contract has been applied with respect to municipal corporations under circumstances where 'equity and good conscience' have seemed to require it"]; Annot., Liability of Municipality or Other Governmental Body on Implied or Quasi Contract for Value of Property or Work (1945) 154 A.L.R. 356, 357 ["the rule is well settled in most jurisdictions that a municipality or other political subdivision may become obligated upon implied or quasi contract to pay the reasonable value of benefits accepted or appropriated by it as to which it has the general power to contract"].)

*City of Los Angeles* (1993) 17 Cal.App.4th 432, 448–449.) But these cases either directly or indirectly rely on *Miller*, *supra*, 20 Cal.2d 83 for this principle, and as has been explained, *Miller* does not stand for such a broad proposition. And even this principle is explicitly premised on "the need to protect and limit a public entity's contractual obligations" (*Lundeen*, at p. 831, fn. 9), which is not a consideration for all quantum meruit claims — the instant claim against the County being just one example, since it is based on the County's statutory duty, not its contractual obligation.

In concluding that Government Code section 815 bars a quantum meruit action, the Court of Appeal below relied primarily on *Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal.App.4th 289. (See *Santa Clara, supra*, 77 Cal.App.5th at p. 1028.) The plaintiff in *Sheppard*, a part-time public school instructor, sought reimbursement from a public agency for his unpaid time spent preparing for teaching. (*Sheppard*, at pp. 293–294.) Notably, an express contract existed between the plaintiff and the agency. (*Id*. at pp. 295, 314.) The plaintiff's complaint alleged causes of action for violation of the minimum wage law, breach of contract, and quantum meruit. (*Id*. at p. 294.) The appellate court held that the trial court erred when it sustained the agency's demurrer to the breach of contract claim (*id*. at p. 313), but that it properly sustained the demurrer to the plaintiff's quantum meruit claim because "such a claim cannot be asserted against a public entity" (*id*. at p. 314). *Sheppard* cited Government Code section 815 and the Legislative Committee Comment accompanying that section, which states that this section " '*abolishes all common law or judicially declared forms of liability for public entities*, except for such liability as may be

required by the state or federal constitution.' " (*Sheppard*, at p. 314.) The *Sheppard* court also determined that the plaintiff's quantum meruit claim failed on the additional ground that such recovery is unavailable when the parties have an actual agreement covering compensation. (*Ibid*.)

Without calling the result in *Sheppard* into question, to the extent it relied on the Government Claims Act, its analysis failed to undertake a careful review of the claim before it, comparable to our inquiries in *City of Dinuba*, *supra*, 41 Cal.4th 859 and *Kizer*, *supra*, 53 Cal.3d 139, before determining whether such claim fell within or outside the purview of the Government Claims Act's immunity provisions. To the extent it held that a quantum meruit claim against the public agency was unavailable more generally, *Sheppard* is plainly distinguishable because an express contract existed between the parties.

To summarize, we are not persuaded that the Legislature intended to foreclose all quantum meruit claims against public entities when it drafted the Government Claims Act's immunity and liability provisions, and certainly not the claim at issue in this case.

In light of our holding that the Government Claims Act does not immunize the County from the Hospitals' action for reimbursement as mandated by section 1371.4 of the Knox-Keene Act, we need not address the Hospitals' alternative argument that the mandatory duty exception to governmental immunity under Government Code section 815.6 also applies.

## III. Disposition

We reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  County of Santa Clara v. Superior Court

_____

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 77 Cal.App.5th 1018
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S274927
**Date Filed:** July 10, 2023

_____

**Court:**  Superior
**County:**  Santa Clara
**Judge:**  Maureen A. Folan

_____

**Counsel:**

James R. Williams, County Counsel, Douglas M. Press, Assistant County Counsel, Melissa R. Kiniyalocts, Susan P. Greenberg, David P. McDonough and Hannah M. Begley, Deputy County Counsel, for Petitioner.

Aurelia M. Razo, Deputy County Counsel (San Diego); and Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Petitioner.

Olson Remcho, Margaret R. Prinzing and Ilan Zur for National Health Economics and Policy Scholars as Amici Curiae on behalf of Petitioner.

Daponde Simpson Rowe, Michael J. Daponde and Darcy L. Muilenburg for Local Health Plans of California as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Helton Law Group, Edward Stumpp, Mikaela Grace Cox, Casey E. Mitchnick, Faatima Seedat; Horvitz & Levy, Mitchell C. Tilner, Peder K. Batalden and Beth J. Jay for Real Parties in Interest.

Athene Law, Long X. Do, Felicia Y. Sze, Eric D. Chan; King & Spalding, Glenn Solomon, Paul R. Johnson and Jonathan Shin for the California Medical Association and the California Hospital Association as Amici Curiae on behalf of Real Parties in Interest.

King & Spalding, Glenn Solomon, Paul R. Johnson and Jonathan Shin for San Jose Healthcare System, L.P., and Good Samaritan Hospital, L.P., as Amici Curiae on behalf of Real Parties in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Susan P. Greenberg
Deputy County Counsel
70 West Hedding Street, East Wing, 9th Floor
San Jose, CA 95110
(408) 299-5900

Mitchell C. Tilmer
Horvitz & Levy LLP
3601 West Olive Avenue, 8th Floor
Burbank, CA 91505-4681
(818) 995-0800